# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| THOMAS WILLIAM HILL,<br><br>　　　　Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. C14-4105-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

Plaintiff Thomas Hill seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for Social Security Disability Income Benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Plaintiff contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision is affirmed.

## I.　BACKGROUND

Plaintiff was born in 1972, has a high school education, and has past work as a cashier/stocker, cook, manager, and prep cook. AR 198, 241. He filed applications for DIB and SSI on October 13, 2011, alleging a disability onset date of February 1, 1999. AR 198-99, 200-06. He contends that he is disabled due to depression, anxiety attacks, bulimia, borderline personality disorder, Obsessive Compulsive Disease (OCD), and fractured vertebra. AR 240.

On January 10, 2012, the Commissioner denied his claims. AR 113-21. Plaintiff requested reconsideration on February 17, 2012, which was denied on April 16, 2012. AR 124, 125-29. He then requested a hearing before an Administrative Law Judge (ALJ) on April 23, 2012, and ALJ Jan Dutton conducted a hearing on June 10, 2013, at which plaintiff and a vocational expert (VE) testified. AR 30-58, 145-46. At the hearing, plaintiff amended his onset date to April 1, 2010. AR 32. On August 7, 2013, the ALJ issued a decision denying plaintiff's claim. AR 10-29.

Plaintiff sought review from the Appeals Council, which denied his request on October 3, 2014. AR 1-4, 5-7. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 CFR 404.981.

Plaintiff filed a complaint (Doc. 3) in this court on November 19, 2014, seeking review of the ALJ's decision. On April 15, 2015, with the consent of the parties (Doc. 15), the Honorable Mark W. Bennett transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the

national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work

setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work, then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there

4

is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a) (4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

### III.  THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

(2) The claimant has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: attention deficit hyperactivity disorder, depression,

5

anxiety, borderline personality disorder, and a history of methamphetamine, alcohol abuse, and marijuana (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant has no physical limitations but is limited to performing routine, repetitive unskilled work with an SVP of 1-2, that does not require extended concentration, attention, and goal setting. The claimant should avoid intense, constant, or frequent work with coworkers, supervisors, and the general public; but can handle occasional, brief and superficial social interaction.

(6) Step 4 – The claimant is capable of performing past relevant work as a dining room attendant (DOT 311.677-018) kitchen helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(7) Step 5 – Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that he is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.

Step 5 – other work identified: The vocational expert testified that given all of these factors the individual

would be able to perform 90% of medium exertion work, 80% of light work and 60-70% of sedentary unskilled work.

(8) The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 13-25.

## IV.  THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support

7

is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Plaintiff argues the ALJ's decision is flawed for four reasons:

1. The ALJ erred by not including severe impairments;
2. The ALJ erred by giving controlling weight to the nontreating, nonexamining state agency doctors' opinions;
3. The ALJ erred by giving little or no weight to the examining source medical opinion; and

4. There is not substantial evidence to support the ALJ's RFC assessment.

The court will address these arguments separately below.

### A. ALJ's Determination Whether Plaintiff Had a Severe Physical Injury

Plaintiff alleges the ALJ erred because the ALJ did not find that plaintiff had severe physical impairments. Pl. Br. at 9. The ALJ found plaintiff had other severe impairments, however, including attention deficit hyperactivity disorder, depression, anxiety, borderline personality disorder, and a history of methamphetamine, alcohol, and marijuana abuse. AR 16. Once the ALJ concluded at Step Two that plaintiff had "severe" impairments, he then proceeded to evaluate plaintiff's claim through the remaining steps of the sequential evaluation process. At Step Two, a claimant must only show "a severe" impairment—that is, one severe impairment—in order to avoid a denial of benefits. 20 C.F.R. § 404.1520(a)(4)(ii). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at Step Two but must proceed to the next step. *Id*. Accordingly, the failure to find an additional particular impairment severe at Step Two is not reversible error as long as the ALJ finds that at least one impairment is severe. *Id*. Similarly, any alleged error by the ALJ in not considering the combined effect of all of a claimant's impairments "became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at Step Two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (same); *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Regardless, the ALJ did not err in concluding plaintiff did not have a severe physical impairment. An impairment is "severe" if it "significantly limits [a claimant's] physical

or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant bears the burden of establishing a severe impairment. *See Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (stating standard of proof). "[S]everity is not an onerous requirement for the claimant to meet . . . but it is also not a toothless standard, and [the Eighth Circuit Court of Appeals has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). In his application, plaintiff claimed severe physical impairment due to a fractured vertebra and bulimia purging (AR 35, 43, 240); he did not claim a physical impairment due to obesity. Plaintiff claimed his back injury was the result of a fall on May 5, 2010 (AR 345), resulting in a minor compression fracture (AR 344). His treating physician released plaintiff with a brace and pain relievers, with no record of further treatment (AR 344). In an October 2011 Function Report, plaintiff indicated he could clean for two to three hours, wash clothes for three to five hours, and mow for one and a half hours (AR 233). This evidence supports the ALJ's finding that plaintiff's back injury was not severe.

Plaintiff argues, though, that the ALJ should have done more to develop the record regarding plaintiff's back injury. Pl.'s Br. at 11-12. A claimant bears the burden of demonstrating he was prejudiced or treated unfairly by the ALJ's failure to develop a record. *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006). In this case, the Commissioner scheduled plaintiff for an examination with a nurse practitioner, whose work was reviewed by a medical doctor (AR 424-26). She found plaintiff maintained good motor strength, his fine motor skills remained intact, he had no appreciable neurological deficits, and he performed heals/toe and tandem walk tasks satisfactorily (AR 426). In other words, there was nothing in this examination which would require further

10

development of the record by the ALJ, or that the ALJ treated him unfairly by failing to further develop the record.

Plaintiff also failed to show prejudice, especially given that the ALJ found at least one other severe impairment at Step Two. Plaintiff must prove actual harm; he cannot simply leave it up to this Court to sort through his arguments to find it. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted); *see Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (holding remand not warranted where claimant was treated fairly and failed to show that he was prejudiced); *see also Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) ("[A]ny error on the part of the ALJ was harmless because there was no indication that the ALJ would have decided differently in the absence of the error.") (citation and internal quotation marks omitted). Whether plaintiff's "severe" impairments should have also included the additional impairments he alleges is ultimately irrelevant to the claim of prejudice, in any event, because the ALJ found that he had severe impairments and proceeded through the sequential evaluation. Thus, any alleged error at Step Two would not change the ultimate outcome. *See Carpenter*, 537 F.3d at 1266.

Finally, plaintiff asserts the ALJ erred by "fixating" on plaintiff's alcohol and drug abuse history. Pl.'s Br., at 9-12. There was nothing improper or erroneous in the ALJ finding that plaintiff's substance abuse constituted a severe impairment as the evidence supported that finding. Regardless, inclusion of the impairment at Step Two is not erroneous where, as here, there was at least one other severe impairment, and the ALJ considered all of the plaintiff's impairments, severe and otherwise, under the remaining steps of the sequential evaluation process.

## B. *The ALJ's Weighing of State Agency Medical Opinion Evidence*

Plaintiff argues the ALJ erred by giving controlling weight to non-treating, consulting medical consultants employed by the state. Pl.'s Br., at 12. An ALJ can give controlling weight only to a treating physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ must, however, consider and rely on non-examining or treating physicians' opinions. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). *See also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (holding as well-settled an ALJ's authority to consider opinions of non-treating medical advisors).

In this case, the ALJ considered and relied in part on opinions of medical consultants John May, M.D., and Beverly Westra, Ph.D., who worked for the state (AR 20-21, 92-96). Plaintiff does not argue or provide a basis to establish that these medical advisors were unqualified. The record shows the ALJ considered their opinions, along with the rest of the medical evidence presented. *See Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (holding that opinions from non-treating medical advisors can constitute substantial evidence supporting an ALJ's findings when the opinions are consistent with other medical evidence). Their opinions are consistent with the medical records, and therefore, the ALJ was proper in considering and relying upon them.

There is nothing in the record to establish that the ALJ afforded their opinions "controlling" authority. Plaintiff's assertion to the contrary, even when made emphatically and repeatedly, does not constitute evidence. The ALJ considered plaintiff's non-treating consultant's opinion (AR 21, 482, 923). The ALJ said nothing that indicates that she gave the state agency physicians' opinions controlling weight; rather, the record reflects a weighing of the opinions of all of the non-treating physicians.

12

### C. *Plaintiff's Examining Physician's Opinion*

Plaintiff argues the ALJ erred by giving little or no weight to the opinion of an examining, non-treating physician. Pl.'s Br., at 13-15. In December 2012, consulting psychologist Michael Baker, Ph.D., examined plaintiff. AR 21, 479-482, 923. Dr. Baker diagnosed plaintiff with attention deficit hyperactivity disorder, generalized anxiety disorder, major depressive disorder, and a history of amphetamine abuse. AR 482. During the examination, plaintiff claimed he had not abused controlled substances since 2000. AR 480. Dr. Baker concluded defendant:

> would seem to have the ability to remember and understand instructions, procedures, and locations. For employment tasks that are not particularly complex, [plaintiff's] ability to maintain attention, concentration, and pace appears to be adequate. His history of emotional problems are [sic] likely to interfere in sustained responsible functioning. His actual responses to mental status exam suggests that he is capable of having good judgment when responding to appropriate changes in the workplace. However, his past methamphetamine abuse, mental health issues, and, of course, borderline personality traits might affect sustained good judgment under perceived stress.

AR 482. Six months later, in June 2013, Dr. Baker sent a letter to plaintiff's counsel in response to an undisclosed solicitation by plaintiff's counsel sent two days after plaintiff's hearing. AR 21, 30, 923. Although Dr. Baker had not examined plaintiff in the interim, Dr. Baker altered his opinion, now concluding plaintiff:

> would have difficulty attending a job on a day to day basis, eight full hours each day for five straight days every week after week. Based on history and other reasons stated in the report, client would likely miss work often and that might be estimated at once a week or five times a month.

AR 923.

The ALJ considered Dr. Baker's report and opinions (AR 20), but discounted it because the ALJ found Dr. Baker's report did not support Dr. Baker's revised opinion

13

and because Dr. Baker provided the opinions after plaintiff had misinformed Dr. Baker about plaintiff's substance abuse history (AR 21). An ALJ may discount the opinion of a physician whose medical record does not support the opinion. 20 C.F.R. §§404.1527(c)(3), 416.927(c)(3); *see also Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010). Moreover, an ALJ need not given any significance to Dr. Baker's opinion of plaintiff's ability to attend work because that is a decision reserved to the ALJ. *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009). This court cannot conclude that the ALJ erred in discounting Dr. Baker's opinion where the plaintiff misinformed Dr. Baker, and where Dr. Baker altered his opinion in response to an undisclosed solicitation by plaintiff's attorney such that it was inconsistent with Dr. Baker's own prior opinion. *See Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2001) (holding that an ALJ may discount a medical opinion which is "inconsistent or contrary to the medical evidence as a whole").

### D. The ALJ's Finding of Residual Functional Capacity

Plaintiff claims the record lacks substantial evidence to support the ALJ's finding of plaintiff's RFC. Pl.'s Br., at 16-18. The ALJ determined plaintiff was capable of work at all exertional levels, subject to certain mental limitations. AR 18. Plaintiff concedes there was no treating physician upon whose opinion the ALJ could rest this determination (Pl.'s Br., at 17-18). The ALJ relied instead on the State agency's medical consultants' opinions (AR 19-20). The ALJ found plaintiff's subjective complaints not fully credible based on the medical evidence, plaintiff's admission in June 2010 that he was "finally able to work," the effectiveness of medication to control plaintiff's symptoms, plaintiff's non-compliance with treatment, and plaintiff's poor work history (AR 19-22).

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must

14

determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. At Step Four, the claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

The ALJ's reliance on the State agency consulting physicians was permissible where, as here, there was no treating physician. Further, although the ALJ must consider a claimant's subjective complaints, the ALJ is responsible for resolving credibility questions and conflicting medical information. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). There is a basis in the record for the ALJ to have discounted the credibility of plaintiff's

subjective complaints where they were inconsistent with other medical evidence and plaintiff's own statements. This court cannot reweigh the evidence, nor find reversible error merely because it would have decided the case differently. *Wildman*, 596 F.3d at 964; *McKinney*, 228 F.3d at 863; *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994). Rather, the court must determine whether substantial evidence supports the ALJ's conclusion, not whether the ALJ could have reached a different decision. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("Even if we would have weighed the evidence differently, we must affirm the denial of benefits if there is enough evidence on the other side."). Here, the court finds that, on the record as a whole, there is substantial evidence to support the ALJ's RFC finding.

## VI. CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of plaintiff's impairments, the court finds that the Commissioner's determination that plaintiff was not disabled is **affirmed**. Judgment shall be entered against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED** this 30th day of March, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa